Derbigny, J.
delivered the opinion of the court. The present suit was first instituted by the plaintiff and appellee and her husband, to recover certain slaves, which they said, were part of the estate left by Sarah Nicholson, of *646 whom she is heir in part. The demand was
East’n. District.
March 1817.
afterwards amended so as as to be made alternative, either for the whole property, or for so much of it as might be found to belong to the estate of Sarah Nicholson.
The material facts in the case are the following:
Sarah Jones, the ancestor of the appellee, was married in North Carolina to James Nicholson, in the year 1769. She was then possessed of a negro slave, named Hannah. Nicholson and his wife emigrated shortly after, to the then British province of West Florida, where they remained until the year 1778, at which time they came to settle in the island of Orleans, within the Spanish dominions, where the wife died. At her death, an inventory of the joint estate of her and her husband was made by order of the Spanish government, at the request of the appellee’s husband; but no partition took place between the surviving partner and the heirs of his wife. He was left in possession of the whole estate, and bound himself not to dispose of any part thereof, until the claims of the heirs of his wife should be established or rejected. A few years afterwards James Nicholson died, having by his will in *647 stituted for his heirs the seven children of his brother Henry, and another nephew, in all eight heirs, among whom is Mary, widow Davis, one of the defendants. It appears that the estate of James Nicholson, including such part as might belong to the heirs of his wife, was divided by his own heirs, and that the slaves claimed in this suit fell to the share of Mary Davis. Of the six slaves mentioned in the petition, five, to wit: Jeffrey, Jeriah and her three children, are claimed as the offspring of Hannah.
The first question is whether Hannah the slave of Sarah Jones, continued to be her separate property after her marriage with James Nicholson? By the laws of North Carolina, where their marriage took place, the reverse must have been the case: there, the personal estate of the wife being vested in the husband, from the moment of the marriage, and slaves being considered as personal property. Hannah, instead of remaining the exclusive property of of Sarah Nicholson, passed under the dominion of her husband exclusively. In opposition to this, we have the repeated declarations of James Nicholson, who, before the death of his wife, frequently acknowleged in conversation that *648 Hannah belonged to her. But a separate personal estate in the wife is a thing so foreign to the common law, that something more than Nicholson’s acknowlegments was necessary to explain it. The claim therefore to Hannah and her progeniture, as the separate property of Sarah Nicholson, cannot be sustained. It seems, indeed, to have been relinquished, when upon a closer enquiry into the the rights of the plaintiff, it was thought prudent to amend the petition, so as to make it embrace a claim of part of the property, as acquired during the community of Nicholson and his wife.
Something has been said, on the part of the plaintiff, of a tacit mortgage, existing in her favour on the property which she claims. But that pretention, besides being incompatible with the present claim, is not founded in law. There exists no tacit mortgage in favour of the wife for the acquets and gains. Curia Phil. tit. hypoteca, no. 27.—and how could such aright exist? The title of the wife to one-half of the acquets and gains is that of an owner, not of a mortgagee: during the matrimony, that title is eventual; on its dissolution, it becomes complete on the property then existing. She has, by law, her choice betwen taking her share of the ac *649 quets, and renouncing them: in the first case, she takes as owner; in the latter, all the acquets are left to the husband, and the wife then exercises her right of tacit mortgage for the recovery of her own particular property. But a claim of half the acquets by right of mortgage implies contradiction.
The demand therefore of the plaintiff, so far as it respects her share in the slaves here claimed, as part of the acquets and gains of which Sarah Nicholson may have died possessed, is the true subject of investigation in this case.
Sarah Nicholson married in a country to the laws of which no such thing is known as a community of acquets and gains between husband and wife. But though it was once a question, it seems now to be asettled principle, that when a married couple emigrate from the country where their marriage was contracted into another, the laws of which are different, the property, which they acquire in the place where they have moved, is governed by the laws of that place. Huberus cited in 3 Dallas, 370. Greg. Lopez on part. 4, 18, 24.
According to that rule, the community between Nicholson and his wife began in 1778, *650 the epoch of their settlement within the Spanish dominions, and had lasted nineteen years when Sarah Nicholson died. Of the six negroes here claimed, Jeffrey was born and Dick was bought anterior to the community; Jeriah was born during it, and Jeriah’s children after the death of the wife, as it appears from the inventory, where Jeriah is said to be eighteen years old, and where some of her children are mentioned On the two first the plaintiff has, of course, a claim; in Jeriah there is as little doubt that she has an undivided interest; but as to Jeriah’s children, the question is involved in some difficulty.
The first thing to ascertain is whether the demand, as it stands, reaches those children. The petition, as we understand it, prays judgment for the specific property, or its value, or so much of it as the interest of the plaintiff therein may amount to, by virtue of the community which did exist between Nicholson and his wife until her death, the expressions are: “that the petitioner may have judgment for the said negroes or their value with damages of detention, as the petitioner may be in equity and justice entitled to the same respectively, or in the community as held by the said Sarah and James Nicholson at the time of her death in 1797."
*651 Whatever interpretation may be given to this demand, it is clear that it is not intended to extend further than the epoch of Sarah Nicholson’s death, and that it does not even suggest a continuation of the community after that time. There if the present demand was for her share in the community generally up to that time, the plaintiff could recover nothing more than the acquets then accrued, because nothing can be allowed beyond the extent of the demand, ultra petita. But here the property acquired after the time limited by the demand is sued for as if it existed before that time. The plaintiff has mistaken the nature of her right; but the thing is demanded, and judgment may pass thereon. See Feb. de Juicios, lib. 3, cap. 1, sect. 13, no. 476—Cur. philip. tit. Sentencia no. 6.
A question of moment is now open for consideration. Does there exist in this country any such thing as a continuation of community between the heirs of the husband or wife, and the survivor, in certain cases; and is this such a case?
A continuation of the community generally, that is to say, an equal participation in the fruits produced by the estates, both of the hus *652 band and of the wife after the death of one of them, is said by the Spanish authors to take place in certain cases, between the survivor and the heirs of the deceased, if the survivor has remained in possession of the whole. Febrero, who has discussed the question at large, classes those cases under four heads:
The first is, when the parties contracting marriage have so stipulated it;
The second, when the parties live in a country where the law 6, tit. 4, book 3, of the Fuero Real, (the only one in the Spanish laws which speaks on that subject) is in actual use;
The third, when all the estate is composed of acquets and gains;
The fourth, when from a voluntary continuance in managing the estate in common, in living together at a common expence out of the common stock, and without settling accounts, the survivor and the heirs of the deceased, have evidenced an intention of remaining in partnership.
The present case does not seem to belong to any of those heads. No stipulation of the kind was ever made between the parties: the law of the Fuero Real above mentioned, is believed not to be in force in this country; the estate was not all composed of acquets and gains, for part of *653 the property inventoried belonged to the husband before the existence of the community; and as to the conduct of the parties, it shews the reverse of an intention to remain in partnership. No such thing, therefore, as a continuation of the community generally can have taken place here. But this case is one in which the survivor has kept possession of some property, one half of which belonged to the deceased. Has not the partnership subsisted as to that joint estate? Febrero answers in the affirmative and his opinion is evidently founded on the soundest principles of justice. The moment that the husband or wife dies, the title to one half of the common property vests immediately in his or her heirs. They become joint owners of the whole together with the survivor. In that state of things, and until a division takes place, or until the title of the heirs is lost in some other way, which is believed not to have taken place here, it is difficult to conceive how the fruits of such property could be otherwise than common to both parties.
The children of Jeriah shall therefore be considered as the property of the joint owners of their mother; and this action as a demand for a division of the property.
Moreau for the plaintiff, Duncan for the defendants.
It is therefore, ordered, adjudged and decreed, that the judgment of the district court be reversed and annulled; and this court, proceeding to give such judgment as the said district court ought to have given, does adjudge, order and decree that the appellee shall recover one fourth part of the within mentioned slaves, to wit: Jeriah and her children Abraham, Nancy, and Judy; to which effect, if no partition in kind can be made amicably within two months, from the date hereof, they shall be sold at public sale, and one fourth of the proceeds shall he paid to the appellee; and it is further ordered that the appellee shall pay the costs of this appeal.